FILED

07/19/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0528

DA 15-0528

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 173

J. RUSSELL PARKER,

        Petitioner and Appellant,

    v.

SAFECO INSURANCE COMPANY OF AMERICA,
and JOHN DOES 1-5,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Fifth Judicial District,
                      In and For the County of Madison, Cause No. DV 29-14-46
                      Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jory C. Ruggiero, Bradley R. Jones, Western Justice Associates,
                Bozeman, Montana

        For Appellee:

                Brooke B. Murphy, Ryan J. Gustafson, Matovich, Keller & Murphy, P.C.,
                Billings, Montana

Submitted on Briefs:  May 18, 2016

Decided:  July 19, 2016

Filed:

                                     Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     J. Russell Parker appeals from the District Court's order filed August 12, 2015, granting summary judgment in favor of defendant Safeco Insurance Company. We affirm.

¶2     We restate the issue on appeal as follows:

*Whether the District Court erred in construing Parker's insurance policy with Safeco to exclude coverage for damage caused by a large rock falling down a hillside into Parker's cabin.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In March 2014 a large boulder dislodged from a hillside several hundred feet from Parker's vacation cabin near Sheridan, Montana. The boulder fell down the hillside and into Parker's unoccupied structure, causing substantial damage. Parker submitted a claim to his insurer Safeco.

¶4     Safeco hired an engineer who examined the incident within 12 days of the rock fall. Safeco's expert reconstructed the 440-foot path that the boulder took down the hillside and into Parker's cabin, and found the "fresh scar" where the boulder dislodged from the cliff. The expert observed "a significant amount of soil remnants" where the boulder originally sat in the cliff, and opined that expansion of soil and water in cracks in the rock caused it to dislodge. Upon receiving the expert's report, Safeco requested more information as to the cause of the rock fall. The expert responded that the freeze-thaw process or "frost wedging" of the soil and water in the rock joints was the cause. The following day, on April 3, 2014, Safeco sent a copy of the expert's report to Parker.

¶5     On April 14, 2014, Parker's expert examined the site.  He concurred with Safeco's expert as to the original location of the boulder on the cliff, and as to the role of the freeze-thaw process in the rock fall.  Parker's expert did not observe "soil" at the cliff site, but rather "infilling from weathered granitic gneiss."  About ten days later Safeco wrote Parker stating that his claim appeared to be excluded by the earth movement exclusion in the insurance policy.

¶6     The Safeco policy contained an exclusion from coverage for damages caused by "earth movement."  The policy provided:

> BUILDING PROPERTY LOSSES WE DO NOT COVER
>
> We do not cover loss caused directly or indirectly by any of the following excluded perils.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss results in widespread damage or affects a substantial area;
>
> .   .   .
>
> 9.     Earth Movement, meaning:
>
> a.     the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not.  Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water.
>
> b.     erosion, shifting or displacement of materials supporting the foundation; and
>
> c.     volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

3

This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

After the experts made their reports and especially after Safeco concentrated on determining the cause of the boulder fall, debates arose, and continue, over whether any "soil" was involved in the boulder fall, and whether rock is "earth" as used in the policy language. Safeco's expert concluded that freezing and thawing of water and soil in the joints of the rock outcrop, over time, caused the boulder to break free and fall. Parker's expert opined that no actual "soil" was involved in the boulder fall because the decomposition of the granitic gneiss at the site from which the boulder fell does not create "soil" that is susceptible to expanding with freezing water. Safeco denied Parker's claim, informing him that the "rockfall is considered earth movement from landslide which is specifically excluded under your policy."

¶7 Parker sued Safeco for breach of contract and for damages under the Unfair Trade Practices Act, §§ 33-18-201 and -242, MCA. Safeco argued that the earth movement exclusion precluded coverage. Parker argued that the policy language was ambiguous; that Safeco had wrongfully changed its theory of why there was no coverage; that "earth movement" did not describe a single falling boulder; and that excluding coverage was contrary to his reasonable expectations. Both parties moved for summary judgment. The District Court granted Safeco's motion and denied Parker's motion.

¶8 The District Court first analyzed Parker's argument that Safeco failed to notify him of the policy defenses it intended to rely upon and had thereby waived the right to raise those defenses. The District Court found that Safeco promptly and clearly informed

4

Parker that it intended to rely on the earth movement exclusion. Therefore, the District Court concluded that he could not have been surprised by the reason for denial. In addition, Parker could not demonstrate any prejudice arising from Safeco's communications on coverage and so could not hold Safeco to have waived its policy defenses.

¶9 The District Court analyzed Parker's argument that the language of the policy exclusion was ambiguous, beginning with the legal premise that ambiguous language in an insurance policy will be construed against the insurer who drafted it. However, the District Court determined that disagreement over the meaning of policy language does not create an ambiguity and absent an ambiguity a court must enforce the contract as written. The District Court analyzed Parker's reliance upon *Kresge v. State Farm Fire and Casualty*, 2012 WL 8499731 (Colo. Dist., Nov. 4, 2012), a case with similar facts and policy language. The District Court found that *Kresge's* conclusion that the policy language was ambiguous was flawed and should not be followed.

¶10 The District Court then analyzed the Safeco policy language, determining that an excluded earth movement event could be either small or large, and could include only a few rocks or many. Accepting Parker's argument that one rock could not constitute an excluded landslide would result in courts being "called upon to distinguish between one rock and two, or two and three" when there is "no principled basis to do so." The Safeco policy language excluded coverage regardless of the size of the event and regardless of whether it is described by one of the listed examples. "The damage to Parker's home

5

resulted from earth movement, an occurrence which the text of the policy unambiguously excludes from coverage."

¶11    The District Court considered Parker's argument that "only soil constitutes earth" and that a rock is not earth under the policy exclusion—that a soil slide would be excluded but a rock slide would not. The District Court concluded that "earth" as used in the policy includes both rock and soil, relying upon the policy's examples of "earth movement" events to include earthquake, landslide, volcanic blast and lava flow. These examples of earth movement could occur with or without soil movement, or with a mixture of soil and rock. Therefore, the District Court concluded that it is clear that "earth" in the policy language must mean "the land surface of the world" which "clearly includes rock." "There is no principled basis to distinguish between the movement of two or three boulders compared to one boulder. The fall of a large boulder is a landslide. The exclusion applies."

¶12    The District Court considered Parker's argument that because the insurance policy represented a contract of adhesion, it was proper to defer to Parker's "reasonable expectations" about the scope of Safeco's coverage. The District Court found no support for Parker's argument. The earth movement exclusion did not nullify any coverage granted elsewhere in the policy and Parker's purported conversations with the adjuster after the rock fall as well as Safeco advertising that he did not read before purchasing the policy were irrelevant. Because the Safeco policy clearly excluded coverage for Parker's loss, he could not demonstrate to the District Court that he had a reasonable expectation of coverage, and he could not establish that the policy was oppressive or unconscionable.

6

¶13 Finally, the District Court rejected Parker's claims under the UTPA. Safeco had a reasonable basis in fact for contesting the claim under the earth movement exclusion. Because the policy "unambiguously excludes coverage for earth movement," the District Court granted summary judgment to Safeco and Parker appeals.

## STANDARD OF REVIEW

¶14 The district court's interpretation of an insurance policy is reviewed as an issue of law, to determine whether the interpretation was correct. *Wendell v. State Farm*, 1999 MT 17, ¶ 10, 293 Mont. 140, 974 P.2d 623. General rules of contract law apply, and we construe insurance policies against the insurer and in favor of the insured. *Travelers Cas. & Sur. Co. v. Ribi Immunochem*, 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469. A court should interpret terms in an insurance policy according to their usual, common-sense meaning as viewed from the perspective of a reasonable consumer of insurance products. *Park Place Apts. v. Farmers Union*, 2010 MT 270, ¶ 12, 358 Mont. 394, 247 P.3d 236. Ambiguity exists when the insuring document, taken as a whole, is reasonably subject to differing interpretations, and ambiguity should be construed in favor of the insured. *Travelers*, ¶ 17.

¶15 This Court reviews a district court's order on a motion for summary judgment by applying the same criteria as the district court under M. R. Civ. P. 56. *Thornton v. Flathead County*, 2009 MT 367, ¶ 13, 353 Mont. 252, 220 P.3d 395.

7

## DISCUSSION

¶16    *Issue: Whether the District Court erred in construing Parker's insurance policy with Safeco to exclude coverage for damage caused by a large rock falling down a hillside into Parker's cabin.*

¶17    The Safeco policy in this case provided several exclusions from coverage, one of which was loss due to "earth movement." Parker contends that because a large rock caused the damage to his cabin, there was no "earth movement."

¶18    The text of the policy contains the bolded heading of "BUILDING PROPERTY LOSSES WE DO NOT COVER." The policy excludes coverage for damage from "earth movement," defined as the "sinking, rising, shifting, expanding or contacting of earth." The policy provides that earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence and erosion. The policy provides that earth movement includes volcanic blasts, lava flows and "fallout of volcanic particulate matter." The policy provides that the coverage exclusion applies whether the earth movement is caused by human forces or an act of nature, and whether or not the earth movement event is widespread.

¶19    The District Court read this provision as a whole, without isolating single words, to determine that the clear intent of the policy language was to expansively exclude coverage for damage caused by any movement of materials that make up the Earth's surface. As the District Court noted, the term "earth" includes more than just soil such as that found in a garden. Reasonable people would recognize that rocks of all sizes ordinarily comprise more or less of the surface of the earth upon which we live. Digging a shovel or two of earth in most places in Montana will yield both soil and rock.

8

Construing the policy to exclude only damages caused solely by soil movement would improperly distort the policy language. *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 35, 354 Mont. 15, 221 P.3d 666.

¶20 Further, there is nothing in the language of the exclusion to indicate that there is any basis for separating rock from soil when considering "earth movement." To the contrary, the policy language includes landslides and lava flow as examples of earth movement. The Montana District Court in Yellowstone County construed "landslide" in an insurance policy exclusion as "the rapid downward movement of a mass of rock, earth, or artificial fill on a slope." *Deschner v. Hartford*, Cause DV 10-1800, Montana Thirteenth Judicial District Court, Yellowstone County (2013). "The ordinary meaning of the term 'landslide' includes rocks falling down a bluff." *Dupps v. Travelers Ins. Co.,* 80 F.3d 312, 314 (8th Cir. 1996). These cases reflect the common understanding of the term landslide as a movement, falling or sliding of whatever is on the surface of the earth and some distance below the surface. Clearly, in many instances this would include both soil and rocks of varying size. Other courts have held that the ordinary meaning of "landslide" in a similar earth movement policy exclusion includes movement of "soil or rock on or from a steep slope." *Murray v. State Farm*, 509 S.E.2d 1, 8 (Sup. Ct. App. W. Va. 1998); *Deschner; Dupps,* 80 F.3d at 314. Similarly, as the District Court explained, lava (a specific example of earth movement listed in the policy) is molten rock per se, and not soil. We agree with the District Court that the clear intent of the Safeco policy language was to broadly exclude coverage for any and all types of earth movement.

9

¶21 We disagree with Parker's basic contention that the District Court found that the Safeco policy was ambiguous and yet failed to construe it against Safeco. While ambiguity in insuring language is construed so as to extend coverage, courts considering coverage issues must examine the document as a whole, giving words their usual meaning. *Mitchell v. State Farm*, 2003 MT 102, ¶ 26, 315 Mont. 281, 68 P.3d 703. Significantly, the District Court never determined that any of the policy language was ambiguous. The fact that the District Court here had to consider and discuss the words of the policy in order to apply it does not equate with a finding that the policy language was ambiguous. Consideration and interpretation of the policy language is simply the court's function when disputes arise.

¶22 The extent that the parties "struggled" as Parker describes it, to apply the policy language was attributable in part to Parker's argument that "earth" could only mean soil, so that the exclusion did not apply. There is no language in the earth movement exclusion requiring the involvement of "soil" or limiting the exclusion to events involving soil. The policy exclusion applies regardless of the cause of the earth movement. The clear examples of earth movement provided in the policy make it clear that it is not limited to movement of soil. The policy exclusion examples include earthquake, landslide, mudflow, mudslide, along with volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter. We agree with the District Court that "earth" as used in the policy is clearly intended to be broadly inclusive of all natural materials that comprise the surface of the earth, including rocks and soil.

¶23 Parker further contends that the District Court wrongfully resolved a genuine issue of material fact in deciding the summary judgment motions. Parker's expert visited the site and could not find any "soil" of a type that could have combined with water to freeze and thaw and cause the rock fall event. However, this again relates to the rejected contention that the presence or absence of "soil" is determinative of coverage. The District Court granted summary judgment based upon the language of the policy, not upon a resolution of a factual dispute.

¶24 As noted, Parker relies heavily upon the Colorado lower court decision in *Kresge* in support of his position. In that case a single boulder fell on insured's property and the insurer denied coverage under the "earth movement" exclusion in the policy. The insured argued that a boulder is not "earth" any more than a tree or an animal carcass, and that a single boulder cannot be a "landslide." That court determined that a majority of other state courts have recently held that the earth movement exclusions are ambiguous, and at the same time there is "so much judicial disagreement" about the earth movement clause that it must be ambiguous. The Colorado court determined that "reasonable consumers" could expect the boulder fall to be covered.

¶25 While many state courts have considered whether "earth movement" coverage exclusions are ambiguous, the vast majority of those cases were decided in the context of disputes over whether the exclusion applied to human-caused events. See, for example, the cases collected at Appendix A in *Murray*. The policy in this case applies the exclusion to earth movement regardless of its cause, making the debate over human-caused events irrelevant. We do not find *Kresge* persuasive.

11

¶26   In *Deschner*, the court considered an incident in which "one or multiple pieces of rock" fell from the Rimrocks in Billings. When that rock hit the ground it broke into pieces and fell onto plaintiff's house, severely damaging it. The insurer denied coverage under its earth movement exclusion and the district court granted summary judgment to the insurer. The parties presented several dueling expert opinions as to whether a "rockfall" constituted a "landslide" from a geologist's perspective, and plaintiff argued that this disagreement demonstrated that the term "landslide" was ambiguous.

¶27   The district court concluded that it need not consider the opinions of the various experts about rock falls and landslides because they do "not bear upon a reasonable consumer's understanding of the term landslide as used in the 'Earth Movement' exclusion." This Court recently held that expert testimony is inadmissible when the issue was construction of the language of a deed which, like the construction of an insurance policy, is a question of law. *Wicklund v. Sundheim*, 2016 MT 62, ¶¶ 15-17, 383 Mont. 1, 367 P.3d 403. *See also Jordan v. Allstate*, 116 Cal. App. 4th 1206, 1218 (2004) (rejecting expert testimony as an aid in construing insurance policies from the viewpoint of a reasonable lay person). Montana Rule of Evidence 702 allows for the use of expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Dubiel v. Montana DOT*, 2012 MT 35, ¶¶ 16-17, 364 Mont. 175, 272 P.3d 66.

¶28   It is well established that a court should interpret terms in an insurance policy according to their usual, common-sense meaning as viewed from the perspective of a reasonable consumer of insurance products. *Park Place Apts.*, ¶ 12. The District Court consulted dictionary definitions of the term "landslide" to determine that it is "the rapid

downward movement of a mass of rock, earth, or artificial fill on a slope." The event under consideration—a large boulder falling off a cliff, breaking upon impact, and then continuing downhill to hit the insured's house—was a landslide under the earth movement exclusion and therefore not covered.

¶29 We agree with the district court's analysis in *Deschner* that a common understanding of the term "landslide" in the context of the earth movement exclusion in the Safeco policy would include the large boulder that came down the hill and onto Parker's cabin. Parker attempts to distinguish *Deschner* on the basis that the boulder in that case fell from its cliff and then broke into two or more pieces, whereas the boulder that hit his cabin stayed intact. There is no basis in the Safeco policy language for such a distinction and no reasonable person would expect coverage to turn upon whether the falling rock stayed intact or broke into two or more pieces.

¶30 Parker contends that Safeco wrongfully changed its reason for excluding coverage, and therefore should be prohibited from denying coverage. *Portal Pipe Line Co. v. Stonewall Ins. Co.*, 256 Mont. 211, 217-18, 845 P.2d 746, 750 (1993); § 33-18-201(14), MCA. The insured seeking to impose coverage in this situation must demonstrate that the insurer's change of position caused him prejudice. *Safeco v. Ellinghouse*, 223 Mont. 239, 245, 725 P.2d 217, 221 (1986). Early in the process Safeco informed Parker by letter that it was denying coverage because the event was "considered earth movement from landslide which is specifically excluded under your policy."

¶31 In this case Parker contends that Safeco's reasons for denying coverage were deficient because they did not also mention that freezing and thawing in fissures up on

13

the cliff caused the boulder to fall. Parker contends that he was prejudiced because he could have had an expert examine the scene earlier had he known about the freezing and thawing. The District Court found, and we agree, that Safeco promptly informed Parker that it would rely upon the earth movement exclusion in the policy, and that Safeco considered the falling boulder to constitute a "landslide" under the examples given in the policy. The District Court further found that Safeco promptly provided a copy of its expert's report on the freezing-thawing cause of the event.

¶32 Finally, we agree with the District Court's determination that Safeco's conduct did not constitute a violation of the UTPA, which prohibits insurers from engaging in unfair and deceptive practices. Section 33-18-101, MCA. Here, Safeco promptly investigated the claim and hired an engineer to examine the facts. Safeco provided Parker with all the information it had about the event as it became available. As the District Court determined, the "UTPA encourages insurers to provide more information rather than less." Safeco informed Parker of its determination that the earth movement exclusion applied, and did not change its initial statement to him that the earth movement exclusion in the policy precluded coverage for his claim. In any event, whether the rock fall was caused by freezing soil or freezing water or a mixture thereof, the earth movement exclusion applied whether the material was "combined with water or not" and it applied whether or not the movement was caused by "external forces" or erosion.

¶33 Because Safeco properly denied Parker's claim based upon an express coverage exclusion in the policy, the District Court properly found that there was no basis for a claim under the UTPA.

14

## CONCLUSION

¶34    Having considered the arguments and authorities raised by the parties, the decision

of the District Court is affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE